UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BWP MEDIA USA, INC. d/b/a | § | |
| PACIFIC COAST NEWS and | § | |
| NATIONAL PHOTO GROUP, LLC, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | No. 3:13-CV-2961-BF |
| | § | |
| T&S SOFTWARE ASSOCIATES, INC., | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiffs' Motion for Partial Summary Judgment [D.E. 23]. For the following reasons, the motion is DENIED.

## BACKGROUND

Plaintiffs BWP Media USA, Inc. d/b/a Pacific Coast News ("BWP") and National Photo Group, LLC ("NPG") (collectively, "Plaintiffs") filed this suit against Defendant T&S Software Associates, Inc. ("Defendant") alleging Copyright Infringement in violation of 17 U.S.C. § 501 *et seq*. *See* Am. Compl. [D.E. 17 at 4-5]. Plaintiffs provide entertainment-related photojournalism goods and services and own the rights to photographs featuring celebrities which they license to online and print publications. *See id.* [D.E. 17 at 1]. Plaintiffs contend that they are the registered owners of a U.S. Copyright for photographs of the musician ke$ha, the actress Julianne Hough, and the musician Ashlee Simpson, all of which were posted on Defendant's website without permission. *See* Pls.' Br. [D.E. 24 at 9-10]. While Plaintiffs acknowledge that the photographs were likely posted by the users of Defendant's website in a forum, Plaintiffs contend that Defendant is still responsible for the content posted therein because it failed to timely designate a registered agent with the United States Copyright Office as required to afford itself the protections provided under the Digital

Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512 *et seq.*, which provides a safe harbor for service providers that meet certain requirements. *See id.* [D.E. 24 at 10-11].

Defendant hosts hairboutique.com, a website which includes a public forum called HairTalk where users can post content, share comments, ask questions, and engage in other on-line interactions with other users on topics such as hair, beauty, celebrities, current events, politics, and dating. *See* Def.'s Br. [D.E. 29 at 2]. Defendant's website has been operating since 1995. *See id.* [D.E. 29 at 2]. The use of Defendant's website is governed by terms of service which state that use of the website constitutes the user's agreement to follow and be bound by terms which provide that "any photo containing . . . celebrities . . . or any copyrighted image (unless you own the copyright) is not permitted." *See id.* [D.E. 29 at 2]. Further, every time a user of Defendant's website logs onto the forum, the user must specifically agree to the forum rules by clicking "yes" that the user agrees that he or she "will not post any copyrighted material . . . . ." *See id.* [D.E. 29 at 2]. Defendant contends that while it reserves the right to review all photographs posted on its website, neither Defendant, its employees or contractors have ever reviewed HairBoutique.com public forum posts prior to them being posted. *See id.* [D.E. 29 at 2]. Defendant contends that if it receives notice that certain posts do not comply with the website's terms, Defendant reviews them and removes the content that it deems inappropriate. *See id.* [D.E. 29 at 3]. Defendant contends that it first learned of the postings of the Ke$ha and Ashlee Simpson photographs when it was served with the instant lawsuit and of the Hough photograph when Plaintiffs filed their amended complaint. *See id.* [D.E. 29 at 3]. Defendant contends that it immediately removed the subject photographs when it became aware of them, and that it was not aware of the requirement to designate an agent with the Copyright Office in order to obtain a limitation on liability through the safe harbor provision of the DMCA. *See*

2

*id.* [D.E. 29 at 3-4].

## STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if its resolution is outcome determinative." *Thompson v. Syntroleum Corp.*, 108 F. App'x 900, 902 (5th Cir. Sept. 3, 2004) (citing *Ginsberg 1985 Real Estate P'ship v. Cadle Co.*, 39 F.3d 528, 531 (5th Cir. 1994)). "An issue is 'genuine' if the evidence is sufficient for a reasonable fact-finder to find in favor of the non-movant." *Id.* A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *See Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). The movant's burden can be satisfied by showing the court that there is an absence of evidence to support the nonmoving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets his burden, the nonmovant must then point to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

## ANALYSIS

Plaintiffs seek summary judgment on their direct copyright infringement claim. *See* Pls.' Br. [D.E. 24 at 12]. In order to prevail on a claim of direct copyright infringement, Plaintiffs must demonstrate the following: (1) ownership of the copyrighted material; and (2) copying by the

3

defendant. *See Prostar v. Massachi,* 239 F.3d 669, 677 n.56 (5th Cir. 2001) (citing *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999)). Direct copyright infringement occurs where the defendant personally engaged in the infringing conduct. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 446 (1984) ("Third party conduct would be wholly irrelevant in an action for direct infringement of respondents' copyrights."); *see also Am. Broadcasting Cos., Inc. v. Aereo*, 134 S. Ct. 2498, 2512 (2014) (Scalia, J., Thomas, J., Alito, J., dissenting) ("There are two types of liability for copyright infringement: direct and secondary. As its name suggests, the former applies when an actor personally engages in infringing conduct."). Secondary liability, on the other hand, is a means to hold defendants responsible for third-party infringement, even when the defendants themselves have not engaged in the infringing activity. *See Sony Corp. of Am.*, 464 U.S. at 435. Secondary copyright infringement applies where a defendant contributorily or vicariously infringed on another's copyrights. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Contributory copyright infringement occurs where a defendant "intentionally induc[ed] or encourag[ed] direct infringement." *Id.* The vicarious liability theory permits the imposition of liability where a defendant "profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement." *See id.* at 931 n.9.

Here, Plaintiffs do not dispute Defendant's contention that the images at issue were posted by the users of Defendant's website. *See* Plaintiffs' Br. [D.E. 24 at 16] ("In the present case, [] the images were likely posted by users of Defendant's Website . . . ."). Therefore, Plaintiffs failed to demonstrate that it is entitled to summary judgment on its direct copyright infringement claim because the evidence pointed to by Plaintiffs demonstrating that copyrighted material were posted

4

on Defendant's public forum does not show that Defendant directly infringed on Plaintiffs' copyrights, especially given Plaintiffs' concession that the photographs were likely posted by third-parties, namely, the users of Defendant's website. *See Grokster, Ltd.*, 545 U.S. at 929-30 ("When a widely shared service or product is used to commit infringement, it may be impossible to enforce rights in the protected work effectively against all direct infringers, the only practical alternative being to go against the distributor of the copying device for secondary liability on a theory of contributory or vicarious infringement."); *Disney Enters., Inc. v. Hotfile Corp.*, 798 F. Supp. 2d 1303, 1308 (S.D. Fla. 2011) ("As the *Netcom* court saw it, making an internet company liable for direct copyright infringement simply because it gave users access to copyrighted material posted by others 'would create unreasonable liability.'" (quoting *Religious Tech. Ctr. v. Netcom On-Line Comm'cn Servs.*, 907 F. Supp. 1361, 1370 (N.D. Cal. 1995))).

## CONCLUSION

For the foregoing reasons, Plaintiffs' summary judgment motion [D.E. 23] is DENIED.

**SO ORDERED**, this 27th day of May, 2015.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

5